**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY MUSTAFA LIFE WILLIAMS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-CV-3511 |
| | : | |
| WARDEN KYLE RUSSELL, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Goldberg, J.                                                                          October 29, 2021

      Plaintiff Anthony Mustafa Life Williams, proceeding *pro se*, brings multiple claims arising out of various incidents at the prison where he is incarcerated.  He names as Defendants multiple prison officials, including Warden Kyle Russell, Deputy Steven Miller, Deputy Robert McFadden, Lieutenant Michal Dailey, Sergeant John Zuber, Sergeant Kowal, Correctional Officer ("C.O.") Alex Watty, C.O S. Hornick, C.O. Gary Dean, C.O. Thomas Holler, C.O. Drew Woodard, and C.O. Jeff Henning (misidentified as Hennie) (collectively, the "Prison Defendants"), as well as fellow inmate Duane Quonnis.  The Prison Defendants have moved to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, I will grant the Motion in part and deny it in part.

## I.     FACTUAL BACKGROUND

      Plaintiffs' Complaints sets forth the following facts: [1]

---

[1]     In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), I must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

      Here, Plaintiff filed his initial Complaint on June 4, 2020, and filed a document he styled as an "Amended Complaint" on August 8, 2020.  His Amended Complaint, however, appears to simply supplement his original Complaint with new events.  For purposes of this Motion, I will treat both the

### A.  Events of July 16, 2019

On July 16, 2019, while using a prison phone, Plaintiff was being taunted by another inmate, James Gatling.  Plaintiff confronted Gatling, at which time Defendant Correctional Officer Gary Dean came over and told Plaintiff to stay out of Gatling's face or he would have a problem. C.O. Dean directed Plaintiff to get off the phone, and Plaintiff told his friend, "I will call you later, I'm about to knock this C.O. out."   As Plaintiff started towards Gatling, C.O. Dean punched Plaintiff in the neck and ribs.  Other officers, including Sgt. John Zuber, Sgt. Kowal, and Lt. Michael Dailey, responded to the fracas.  Plaintiff was sprayed, handcuffed and escorted to "the hole" by Sgt. Zubert, C.O. Alex Watty, and C.O. Scott Hornick.  (Compl. ¶¶ 14–22.)

Once in the hallway, Plaintiff was placed in a chair.  Sgt. Kowal came in, opened a locker and handed out gloves to the other correctional officers.  Sgt. Kowal then ordered Plaintiff, still handcuffed, to stand up and asked if he liked hitting members of their gang.  When Plaintiff stood, Sgt. Kowal punched Plaintiff in the stomach and head, causing him to fall to the ground.  While Plaintiff was on the ground, Sgt. Zuber shocked him with a handheld device, and the other officers proceeded to punch and kick him in the head, back, and legs, at which point Plaintiff blacked out. Plaintiff was returned to his cell, badly injured.  (Id. ¶¶ 23–27.)

Without giving Plaintiff an opportunity to give his side of the story, Deputy Warden Steve Miller placed Plaintiff on security alert and put him in administrative segregation with limited privileges.  Plaintiff claims that as a result of being on administrative segregation, he endured poor conditions including limited clothing and bed linens, denial of shoes in the yard regardless of the weather, increased mice infestation, dirty and damaged sleeping mats in lieu of mattresses, black mold on the ceiling tile, a poor law library without any legal help, and a limited diet.  Plaintiff

---

Complaint and Amended Complaint as Plaintiff's original pleadings and will reference both documents jointly as the "Complaint."

alleges that Defendants Russell, Miller, and McFadden were aware of these conditions and failed to take any action in response.  (Id. ¶¶ 36–59.)

### B.  Events of June 2020

On June 24, 2020, around 8:00 p.m., an argument took place between Plaintiff and two other inmates—Duane Quonnis and Taiton Edwards—in front of Defendant Correctional Officers Thomas Holler and Woodard.  Quonnis and Edwards threatened to attack Plaintiff.  After Plaintiff was locked in his cell, he allegedly heard C.O. Holler say, "he [Plaintiff] likes to assault guards, so he should be assaulted."  Quonnis replied, "don't worry I got him tomorrow," and Edwards said, "if I see him upstairs, I will stab him and if I see him in the jail, I will get him, you know Dean is my boy."  C.O. Holler told the two inmates, "don't worry, I will make sure you get your job back and you won't lose nothing."  Neither C.O. wrote any misconduct reports or noted anything to warn the first shift staff.  (Am Compl. pp. 1–2.)

On June 25, 2020, around 9:00 a.m., while Plaintiff was on the computer doing legal work, inmate Quonnis, who was being handcuffed and being escorted by C.O. Henning, ran over to Plaintiff and attacked him.  C.O. Henning failed to properly restrain Quonnis, and Plaintiff was unable to defend himself.  Plaintiff's head was split open, leaving him with blurry vision in his left eye, migraines and headaches.  (Id. at p. 2.)  Later that day, C.O. Holler congratulated Quonnis and told Edwards that he better keep his word.

### C.  Procedural History

On June 4, 2020, Plaintiff filed a Complaint alleging state law claims of assault and battery, as well as claims under 42 U.S.C. § 1983 for excessive force, denial of access to courts, and violations of his First and Fourteenth Amendment rights in connection with the July 2019 incident.  On August 18, 2020, Plaintiff filed an "Amended Complaint" setting forth additional claims related to the June 2020 incident.

On March 1, 2021, the Prison Defendants moved to dismiss the claims against them. Although Plaintiff filed an untimely response on June 23, 2021, I will consider his brief.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal, 556 U.S. at 679).

A prisoner's *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers."  U.S. ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)).  The court must construe the facts stated in the complaint liberally in favor of the plaintiff.  Haines, 404 U.S. at 520.  "Yet there are limits to our procedural flexibility.  For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim."  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).  Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement."  Iqbal, 556 U.S. at 678 (internal quotations omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do."  Id.

## III.   DISCUSSION

### A.  Exhaustion

The Prison Defendants first press that Plaintiff's claims must be dismissed for failure to exhaust administrative remedies.

The Prison Litigation Reform Act of 1995 ("PLRA") prevents prisoners from filing suit with respect to prison conditions under Section 1983 "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 85 (2006); Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007).  Exhaustion requires proper exhaustion, meaning that an inmate must "complete the administrative review process" in compliance with all applicable procedural rules prior to filing suit in federal court.  Woodford, 548 U.S. at 88.  In other words, inmates must avail themselves of "all steps the agency holds out" and do "so properly."  Id. at 91.  The exhaustion requirement is mandatory, Ross v. Blake, 136 S.Ct. 1850, 1856 (2016), and "applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  To determine whether a prisoner has properly exhausted a claim, a court must evaluate the "prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials."  Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004).

Notably, however, failure to exhaust administrative remedies is an affirmative defense, which a defendant bears the burden to plead and prove. Jones v. Bock, 549 U.S. 199, 216 (2007); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003).  "[I]t is not a pleading requirement for the prisoner-plaintiff."  Small v. Camden County, 728 F.3d 265, 268 (3d Cir. 2013).  Furthermore, "the defendant must prove that the prisoner-plaintiff failed to exhaust *each* of his claims.  There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim."  Id. (emphasis in original).

Here, the Prison Defendants' Motion simply argues that "Plaintiff does not aver he exhausted his administrative remedies through all of the required steps of the Jail's grievance process.  Therefore, plaintiff's claims, if they are viable, which is disputed here, must be dismissed under 42 U.S.C. § 1997e(a)."  (Defs.' Mot. 25.)  This argument not only imposes on Plaintiff an improper pleading requirement, but it disregards the Complaint's allegations that Plaintiff has filed multiple grievances with the Warden and followed all available procedures to seek final review. (Compl. p. 3.)  At this stage of the proceedings, I must take such allegations as true.  Defendants bear the burden of pleading and proving that Plaintiff has not actually exhausted the grievance procedure, which appropriately accounts for Defendants' unique access to prison administrative records.  As such, I will deny their Motion on this ground.

**B.**     **Section 1983 Excessive Force and Failure to Protect Claims**

Plaintiff alleges that the various Prison Defendants, while acting under color of law, deprived him of his rights, privileges, and immunities granted to him as a citizen of the United States.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. The statute itself does not independently create substantive rights, but rather "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002); Bush v. Lancaster City Bureau of Police, No. 07-cv-3172, 2008 WL 3930290, at *3 (E.D. Pa. Aug. 26, 2008).  A plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983.  Stated differently, a plaintiff alleging a § 1983 violation must demonstrate that: (1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes.  Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).

Several of the Prison Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the § 1983 claims against them.

1.    <u>Defendant Dean</u>

Plaintiff sets forth a § 1983 claim against Correctional Officer Dean presumably based on his role in the alleged assault on Plaintiff.  The Prison Defendants assert that because Dean acted with justification in defending himself, Plaintiff fails to state a plausible cause of action.

The United States Court of Appeals for the Third Circuit, in <u>Fuentes v. Wagner</u>, 206 F.3d 335, 342 (3d Cir. 2000), set forth the standard for evaluating excessive force claims brought by pretrial detainees[2] under the Due Process Clause of the Fourteenth Amendment:

> A detainee may not be punished prior to an adjudication of guilt in accordance with the due process of law.  However, once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Thus, restraints that are reasonable related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting. Obviously, ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both. Consequently, whether . . . restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive government purpose and whether they appear excessive in relation to that purpose. Thus, there is a distinction between punitive measures that may not be constitutionally imposed prior to a determination of guilt and regulatory restraints that may.

<u>Id.</u> (internal quotations omitted).

Under this standard, for a pretrial detainee to state an excessive force claim against a prison official, he must allege that the force used was applied "maliciously and sadistically to cause harm" and not "in a good-faith effort to maintain or restore discipline." <u>Hudson v.</u>

---

[2]    Plaintiff alleges that during the time period relevant to this case, between February 7, 2019 and February 7, 2020, he was a pretrial detainee.  (Compl. ¶ 14.) Taking this allegation as true, I will analyze Plaintiff's excessive force and conditions of confinement claims under the Fourteenth Amendment rather than as a claim of cruel and unusual punishment under the Eighth Amendment.

McMillian, 503 U.S. 1, 1–2 (1992).  The factors relevant to this inquiry include "the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Id.  An inmate does not have to show that the harm suffered was sufficiently serious in order to make out a constitutional violation where excessive force was used, and absence of serious injury does not end the inquiry.  Id. at 8; see also Brooks v. Kyler, 204 F.3d 102, 104 (3d Cir. 2000) ("Following Hudson's focus on the force used, as opposed to the injury inflicted, we conclude that although the degree of injury is relevant for any [constitutional violation] analysis, there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force").

As a corollary to the excessive force inquiry, the Third Circuit has remarked that an officer also has a "duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior."  Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).  The Court recognized that "[t]he approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows."  Id. at 651.  As such, constitutional restrictions on use of excessive physical force reaches non-intervention "just as readily" as it reaches those who actually perpetrate the excessive force.  Id.

Here, the Prison Defendants contend that Dean's use of force was justified and employed in good faith to address a risk posed by Plaintiff.  They contend that, according to the pleadings, Plaintiff was a known threat, was involved in a verbal altercation with another inmate, and

expressed his intent to assault Dean.  Accordingly, the Prison Defendants  posit that Dean's actions did not violate Plaintiff's constitutional rights.

Considering the allegations of the Complaint in light of the factors enumerated by the Third Circuit, I disagree and find that Plaintiff has alleged a plausible claim of excessive force against Dean.  Plaintiff asserts that, while he was on the phone, he was being taunted by another inmate. When Plaintiff confronted the other inmate, Dean intervened.  Although Plaintiff admitted saying that he was going to "knock this C.O. out," nothing in the pleadings suggests that Plaintiff used any actual violence.  Plaintiff then alleges that Dean jumped in and punched Plaintiff in the neck and ribs, immediately after which at least three other officers jumped in and sprayed and handcuffed Plaintiff.  Subsequently, Plaintiff was escorted to the "hole" by other officers where he was severely beaten to the point of unconsciousness.  Based on these allegations alone, I cannot determine, without making additional findings of fact, that Dean's use of force or non-intervention in others' use of force was justified based on a reasonably perceived threat.  Nor can I conclude that there was a reasonable relationship between the need and the amount of force used.[3] Accordingly, I decline to dismiss this claim.

---

[3]     In support of their argument, Defendants rely on the Third Circuit decision in Reyes v. Chinnici, 54 F. App'x 44 (3d Cir. 2002).  In Reyes, the prisoner plaintiff alleged a claim of excessive force against a correctional officer.  Id. at 46.  Applying the above factors, the district court granted summary judgment in favor of the defendant, noting that the plaintiff admitted that he was a "security status" inmate, that he attempted to spit on the defendant, the defendant struck the plaintiff once in the shoulder and not in the head or face, the purpose of the defendant's reaction was to avoid being spit on, the resulting injury was minor and temporary, and the correction officers then immediately placed the plaintiff back in his cell without further incident.  Id. at 47. The Third Circuit affirmed the grant of summary judgment finding that "[a] single punch to avoid being spit upon is not the sort of action that is 'repugnant to the conscience of mankind'" and, therefore was not a constitutional violation.  Id.

I do not find the Prison Defendants' argument or their citation to Reyes convincing.  Reyes was decided at summary judgment after full discovery on the issue, not on the basis of the pleadings.  By contrast here, I must take the facts of the Complaint as true.

2.      Defendants Holler and Woodard

The Prison Defendants next seek to dismiss the claims against Defendants Holler and Woodard.  They contend that the sole allegations against Holler—that he verbally harassed Plaintiff—do not, without more, violate Plaintiff's constitutional rights.  They further press that Woodard's mere witnessing of a verbal altercation is likewise not actionable.

While "[i]t is well settled that verbal harassment of a prisoner, although deplorable" does not state a claim for excessive force, Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006), prison officials have a duty to "take reasonable measures to protect prisoners from violence at the hands of other prisoners."  Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  Inherent in that duty is the obligation to not incite violence against a prisoner by other inmates.  See Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992) (overturning Rule 12(b)(6) dismissal of complaint alleging that prisoner was beaten by inmates because a guard told them the prisoner was a "snitch"; allegation that guard intended to harm prisoner by inciting other inmates to beat him states a claim); Miller v. Coning, No. 11-cv-377, 2011 WL 2708649, at *3–4 (D. Del. July 12, 2011) (declining to dismiss prisoner's allegation that guards labeled him a "snitch," after which he was beaten by other inmates).  To state a failure-to-protect claim, a prisoner must plead facts showing that (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm.  Parkell v. Markell, 622 F. App'x 136, 139 (3d Cir. 2015).  An official acts with deliberate indifference was he or she knows of and disregards a substantial risk of serious harm to inmate health or safety.  Jones v. Beard, 145 F. App'x 743, 745 (3d Cir. 2005).

Here, as to Defendant Holler, Plaintiff asserts that Holler's actions went beyond mere verbal harassment.  Following an argument between Plaintiff and inmates Quonnis and Edwards,

11

during which Quonnis and Edwards threatened to attack Plaintiff, Plaintiff allegedly heard Holler

tell Quonnis, "he likes to assault guards, so he should be assaulted."  In response, Quonnis replied,

"don't worry I got him tomorrow," and Edwards stated, "if I see him upstate, I will stab him and

if I see him in the jail, I will get him, you know Dean is my boy."  C.O. Holler then said, "don't

worry, I will make sure you get your job back and you won't lose nothing."  Subsequently, Plaintiff

was attacked by Quonnis, after which Holler went to Quonnis's cell to congratulate him.  Such

allegations plausibly suggest that Holler was not only deliberately indifferent to a known and

substantial risk of serious harm to Plaintiff, but that Holler actually took affirmative action to

encourage that violence.  Accordingly, I decline to dismiss this claim.

As to Defendant Woodard, the Complaint contends that Woodward overheard the

argument between Plaintiff and inmates Quonnis and Edwards, but did nothing to protect Plaintiff.

Specifically, Plaintiff alleges that Woodard neither wrote a misconduct report nor warned the first

shift staff about Quonnis and Edwards's threat.  Such allegations, albeit sparse, are sufficient, at

this juncture, to plausibly suggest that Defendant Woodard knew of a serious threat of harm to

Plaintiff yet was deliberately indifferent to that risk.  Therefore, I will decline to dismiss this claim

as well.

### 3.   Defendant Henning

Plaintiff also brings a § 1983 claim against Defendant Henning, alleging:

> On 6/25/20, around 9 a.m., while on the computer doing law work,
> C.O. Jeff Henni[ng], while not properly escorting inmate Quonnis,
> the inmate ran over to the plaintiff and attacked plaintiff twice, with
> cuffed hands. . . . C.O. Jeff Henni[ng] failed to properly restrain
> inmate Quonnis either intentionally, recklessly or due to his training
> or lack of additional guards. . . . As a result of the vicious attack,
> which is on camera, I was unable to defend myself and staff was not
> defending me, my head was split open, I was bleeding profusely, I
> experience extreme pain, blurry vision and headaches.

(Compl. p. 2.)

Nothing in these allegations sets forth a plausible § 1983 claim against Officer Henning. Plaintiff does not assert that Henning had any knowledge of the risk posed by Quonnis. Plaintiff also does not suggest that Henning failed to intervene in the attack. Rather, the claim against Henning sounds in mere negligence, which is not a sufficient basis on which to impose § 1983 liability. Absent any additional factual assertions against Henning, I will dismiss the § 1983 claim against him.

4.    <u>Defendant Russell, Miller, and McFadden</u>

The Prison Defendants next move to dismiss all § 1983 claims against Defendants Warden Kyle Russell, Deputy Steven Miller, and Deputy Robert McFadden, arguing that Plaintiff has failed to set forth any allegations showing their personal involvement.

In order to prevail on a § 1983 claim against a supervisor, a plaintiff must show either that (1) the supervisor directly participated in violating a plaintiff's constitutional rights, (2) that he directed others to do so, or (3) as the officer in charge, the supervisor had knowledge of and acquiesced in constitutional violations committed by subordinates. <u>Zimmerman v. Schaeffer</u>, 654 F. Supp. 2d 226, 253 (M.D. Pa. 2009) (citing <u>Beers–Capitol v. Whetzel</u>, 256 F.3d 120, 134 (3d Cir. 2001)). A plaintiff may also establish supervisory liability by showing that a supervisor tolerated past or ongoing misbehavior by subordinates:

> The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

<u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 216 (3d Cir. 2001).

13

Here, in support of his claims against Defendants Russell, Miller, and McFadden, Plaintiff sets forth the following allegations:

- "Deputy Warden McFadden directly controls and directs the Defendants Lt. Dailey, Sgt. Kowal and Sgt. Zubar to assault inmates and covers up or attempts to cover up said action through having them write false reports, teaching them how to avoid cameras, what to wear and not to wear to assault inmates and directs that criminal charges be brought, as well as being the head of the gang that is in the jail terrorizing inmates."  (Compl. ¶ 32.)

- "A video tape of C.O. Dean assaulting me was taken and shows him hitting me twice and throwing a total of four punches at me, yet they, the jail, directly directed by Deputy Warden McFadden, pressed criminal charges despite proof showing he assaulted me."  (Id. ¶ 33.)

- "Deputy Warden Steve Miller without any opportunity to refute the allegations on 7/17/19 placed me on security alert I whereby once I finish my hole time, I am still in the hole with a few extra privileges more than disciplinary status, but far less than population.  This status, administrative segration is one with no way to be allowed back in population."  (Id. ¶ 34.)

- "I received a misconduct hearing . . . and was directed . . . to be found guilty. . . . I then appealed and Deputy Warden McFadden and Deputy Warden Steve Miller sustain the sanction despite viewing the video tape showing I defended myself and never struck C.O. Dean or struggled."  (Id. ¶ 35.)

- "Defendant Warden Russell and Deputy McFadden [were] made aware of danger  . . . through grievances: 19-025, 0058-2020, 20-027 and 19-0225, where I constantly report being assaulted or fearing assault[]. . . .  [Russell and McFadden failed] to transfer me to another prison before I was assaulted."  (Am. Compl. p. 3.)

Taking all facts in the Complaint as true, and cognizant of the early stages of this action, I find that Plaintiff has plausibly stated a claim for supervisory liability against Defendants Russell, McFadden, and Miller.  Therefore, Defendants' Motion to Dismiss these claims will be denied.

B.  **Section 1983 Claims for Conditions of Confinement**

Plaintiff also brings a § 1983 claim challenging his conditions of confinement.

14

"A pretrial detainee's protection from punishment under the Fourteenth Amendment has been distinguished from a convicted prisoner's protection from punishment that is 'cruel and unusual' under the Eighth Amendment." Hall-Wadley v. Maintenance Dept., 386 F. Supp. 3d 512, 516 (E.D. Pa. 2019).  The Third Circuit has held that pretrial detainees "are entitled to greater constitutional protection than that provided by the Eighth Amendment." Hubbard v. Taylor, 399 F.3d 150, 167 n.23 (3d Cir. 2005). When a pre-trial detainee claims that the conditions of confinement violate his due process rights, "the proper inquiry is whether those conditions amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979).  The United States Supreme Court established a two-prong standard for determining whether conditions of confinement violate Due Process: whether the questioned "restrictions and practices" (1) "are rationally related to a legitimate nonpunitive governmental purpose[,]" and (2) "whether they appear excessive in relation to that purpose." Id. at 561.

As noted above, to prevail on a Fourteenth Amendment claim brought pursuant to § 1983, a pretrial detainee must also demonstrate that a particular defendant acted with "deliberate indifference" to those conditions. Edwards v. Northampton Cnty, 663 F. App'x 132, 135 (3d Cir. 2016).  Deliberate indifference is established if a defendant "knows that inmates face a substantial risk of serious harm" and "disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

In support of his conditions of confinement claim, Plaintiff sets forth multiple allegations:

- Block 3C inmates (restrictive custody) are deprived of adequate clothing.  Inmates are allowed only two blankets, one sheet, one towel, one pair of socks, one t-shirt, one pair of underwear, one pair of uniform pants, one shirt, and shower shoes. (Compl. ¶ 38.)

- Inmates in Block 3C must go to the shower half naked, resulting in humiliation and sexual harassment.  (Id. ¶ 40.)

- Inmates in Block 3C may not have shoes to go to the yard.  During the winter months, inmates have to stand outside without shows, making yard time almost impossible.  (Id. ¶ 39.)

- There has been an increase in mice infestation in Block 3C.  Mice go in and out of and defecate in cells every day.  (Id. ¶ 41.)

- Inmates in Block 3C are provided mats, not mattresses, and at least 90% are ripped and dirty.  (Id. ¶ 42.)

- Block 3C has mold in the showers and on the ceiling tile next to the vents.  The vents blow the mold into the cells, causing Plaintiff respiratory problems.  (Id. ¶ 43.)

- Block 3C inmates are not allowed milk and juice.  Meals are plain, often not cooked or raw, and not a sufficient portion size to satisfy anyone.  As a result, Plaintiff alleges that he suffers from hunger pangs and fatigue and has lost substantial weight.  (Id. ¶¶ 53–57.)

According to the Complaint, Defendants Miller and McFadden not only had knowledge of all these conditions, but have created and sanctioned them.

Taking all of these allegations as true, Plaintiff has plausibly pled that the conditions—all of which include denial of food, clothing, shelter, and sanitation—constitute "punishment" not rationally related to a legitimate governmental purpose.  Moreover, Plaintiff has adequately pled deliberate indifference on the part of Defendants McFadden and Miller by alleging that they were aware of the conditions and condoned them.  Plaintiff has not, however, alleged any personal involvement or deliberate indifference by Warden Russell.  As such, will I grant the Motion as Defendant Russell but deny it as to Defendants McFadden and Miller.

### C.  Section 1983 Claims for First Amendment Violation

Under the First and Fourteenth Amendments, prisoners retain a right of access to courts.  See Lewis v. Casey, 518 U.S. 343, 346 (1996).  Prisoners, however, may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement.   Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).

16

Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"—that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit.  Id.  "To that end, prisoners must satisfy certain pleading requirements:  the complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  Id. at 205–06.  "The underlying claim, . . . is an element that must be described in the complaint as though it were being independently pursued."  Christopher v. Harbury, 536 U.S. 403, 415 (2002).

Here, Plaintiff alleges the following in support of his First Amendment claim:  (1) the e-law library only allows access to Third Circuit cases and does not provide case law from other Circuits; (2) the law library is missing a book called Criminal Defense Techniques, which shows how to file pro se; (3) inmates cannot shepharize cases; (4) there is no one to offer legal help to inmates; and (5) both administrative segregation and disciplinary segregation have more restricted access to the law library.  (Compl. ¶¶ 44–45.)  Plaintiff asserts that as a result of this restricted access he was unable to fully research issues pertaining to a suppression hearing, a habeas petition, and the current case, resulting in losses.  (Id. ¶¶ 48–52.)  In addition, at his May 22, 2019 suppression hearing, he claims that he wanted to represent himself but, because of his limited access to materials, he was forced to accept representation by an attorney.  He contends that had he had better access to legal materials, the outcomes of these proceedings would have been different.  (Id.)

Such allegations are insufficient to state a claim for several reasons.  Primarily, Plaintiff fails to explain how the limited materials in the law library affected his ability to present valid claims in his various court filings.  His plain statement that he was "unable to properly show my

defense and was denied the ability to legally and properly argue my side," is inadequate to plausibly plead a First Amendment claim.  (Compl. ¶ 48.)  Moreover, as to his suppression hearing claim, Plaintiff admitted that he had the benefit of an attorney.  See Johnson v. Chester Cnty. Prison, No. 19-cv-4960, 2020 WL 405605, at *6 (E.D. Pa. Jan. 24, 2020) (noting that the right of access to courts may be satisfied if the plaintiff has an attorney).  As I find that Plaintiff has failed to plausibly plead actual injury, I will dismiss this claim.

    **D.**    **Fourteenth Amendment Equal Protection Claim**

Plaintiff also appears to set forth an equal protection claim pursuant to the Fourteenth Amendment.  An equal protection violation in a prison setting requires proof that an inmate "was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . . He must also show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that [a plaintiff] must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation and quotation marks omitted); see also Robinson v. Superintendent Houtzdale SCI, 693 F. App'x 111, 118–19 (3d Cir. 2017); Lane v. L.S. Kerns-Ban, No. 05-cv-1664, 2007 WL 2343797, at *3 (W.D.Pa. 2007).

Plaintiff's equal protection claim presents several scattershot allegations:

- In Lehigh County jail, there are female inmates that are in both administrative and disciplinary segregation, but they are allowed to retain all of their clothes.  Male inmates, however, are forced to surrender most of their clothes on administrative and disciplinary segregation.  (Compl. ¶ 38.)

- Transexuals who come to Block 3C are permitted to retain their t-shirts and bras and go to the shower with them, while heterosexual males are forced to give up t-shirts when on disciplinary segregation.  (Id. ¶ 40.)

18

These allegations do not allow any plausible inference that the difference in treatment was the result of intentional or purposeful discrimination.  Moreover, Plaintiff does not set forth any basis to find that the distinction in treatment was not reasonably related to legitimate penological interests caused by biological differences between males and females.  I will therefore dismiss this claim.

      **E.**      <u>**State Law Claims Against Defendants Russell, Miller, McFadden, and Henning**</u>

Although the scope of Plaintiff's state law claims is not entirely clear, it appears that he brings state law claims of assault and battery.  The Prison Defendants seek to dismiss all state law claims against Russell, Miller, McFadden and Henning, alleging that they are barred under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. §§ 8501, <u>et seq.</u>

Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. § 8541. This limitation extends to an employee of a local agency to the extent his acts were within the scope of his office or duties. <u>Id.</u> § 8545. Immunity is abrogated for negligent acts falling into one of eight proscribed categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. <u>Id.</u> § 8542(b).

With respect to intentional acts, however, section 8550 permits actions against governmental employees who by their misdeeds are determined to have "caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions

of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply." 42 Pa. Cons. Stat. § 8550.  The United States Court of Appeals for the Third Circuit has recognized that "[e]mployees are not immune from liability under § 8545 where their conduct amounts to 'actual malice' or 'willful misconduct.'" Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006). "Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such a desire can be implied.'  Otherwise stated, the term 'willful misconduct' is synonymous with the term 'intentional tort.'" Id. (quoting Renk v. City of Pittsburgh, 641 A.2d 289 (Pa. 1994)).

Here, the only allegations against Defendants Russell, Miller, and McFadden relate to Plaintiff's claims under the First, Eighth, and Fourteenth Amendments to the Constitution.  He does not appear to allege any state law claims against them.  To the extent Plaintiff means to assert assault and battery claims,[4] the Complaint is devoid of any allegations of any intentional conduct by these Defendants.  Absent a plausible assertion that these Defendants engaged in any willful misconduct, I must dismiss all state law claims against them.

As to Defendant Henning, Plaintiff has not pled a claim of assault or battery against him, let alone alleged willful misconduct.  The only allegation against Defendant Henning is that he failed to properly restrain an inmate he was escorting.  Accordingly, I will dismiss the state law claims against him.

---

[4]     Under Pennsylvania law, "[a]n assault is an intentional attempt by force to do an injury to the person of another." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (quotation omitted).  "[A] battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Id.

F.      **Qualified Immunity**

Finally, the Prison Defendants argue that they are entitled to qualified immunity with respect to all claims against them.  I disagree.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To overcome a defense of qualified immunity, a plaintiff must "plead[ ] facts showing that (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v al-Kidd, 563 U.S. 731, 735 (2011).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Hope v. Pelzer, 536 U. 730, 740 (2002) (quotations omitted).   To meet this test, generally "there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited."  McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).   To overcome the assertion of qualified immunity at the motion to dismiss stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly-established one.  Id.; see Gaymon v. Borough of Collingdale, 150 Fupp.3d 457, 462 (E.D. Pa. 2015).

Here, Defendants assert that although Plaintiff's Complaint alleges physical contact, it is devoid of any averments that such conduct was inappropriate, improper, or excessive particularly given the fact that Plaintiff admitted instigating the confrontation at issue.   This argument, however, requires that I make factual findings—a task that it is not proper at the motion to dismiss stage.  Having already found that Plaintiff has adequately pled that the Prison Defendants violated

his clearly-established constitutional rights, I will decline to grant qualified immunity at this juncture.

## IV.    CONCLUSION

In light of the foregoing, I will grant the Prison Defendants' Motion to Dismiss with respect to (a) all claims against Defendant Henning; (b) the First Amendment and Equal Protection claims; and (c) the state law claims against Defendants Russell, Miller, and McFadden.   Nonetheless, I remain cognizant that in a civil rights case, a court must *sua sponte* allow a plaintiff leave to amend his or her complaint unless it would be inequitable or futile to do so.   Phillips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).   Based on the discussion above, it is conceivable that Plaintiff could allege sufficient facts to support his dismissed claims.   Accordingly, Plaintiff shall be granted leave to amend his Complaint with regards to these claims. In all other respects, the Prison Defendants' Motion will be denied.

An appropriate Order follows.